**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

**FILED**
2008 Nov 10 PM 02:46
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 06-33227 |
| | ) | |
| SAI Holdings Limited, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Adv. Pro. No. 08-3036 |
| | ) | |
| SAI Administrative Claim and Creditor Trust, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Benecke-Kaliko AG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### ORDER DENYING MOTION TO DISMISS

    This adversary proceeding is before the court on a motion to dismiss and memorandum in support ("Motion") [Doc. ## 14 & 15] filed by Defendant Benecke-Kaliko AG ("Benecke-Kaliko"), Plaintiff's response [Doc. # 19], and Benecke-Kaliko's reply [Doc. # 21]. The Motion is brought under Federal Rule Civil of Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b). In the Amended Complaint, Plaintiff alleges claims of breach of contract, unjust enrichment and breach of fiduciary duty.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. In a separate motion, filed after the instant motion to dismiss, Benecke-Kaliko seeks an order finding that this proceeding is not a core proceeding. That motion is currently set for hearing on December 17, 2008. While the court reserves ruling on this issue until after the date on which the motion is set for hearing, a conclusion that this is a non-core proceeding would not deprive this court of jurisdiction over the parties or the subject matter of this proceeding. *See* 28 U.S.C § 157(c)(1). Such a conclusion would only preclude the court from entering a final order or judgment in this proceeding. *Helbling v. Josselson (In re Almasri)*, 378 B.R. 550, 553-54 (Bankr. N.D. Ohio 2007) (explaining that "because 28 U.S.C. § 157(c)(1) speaks only to 'final' orders or judgments, the plain language of that provision dictates that [the bankruptcy court] has the authority to enter interlocutory orders in non-core proceedings").

In this case, having considering the parties' briefs and the arguments of counsel, the court concludes that Benecke-Kaliko's motion to dismiss should be denied. An order denying a motion to dismiss is not a final order. *Id.* (citing *Archie v. Lanier*, 95 F.3d 438, 442 (6th Cir. 1996)). This court, therefore, has authority to enter this interlocutory order regardless of whether this proceeding is core or non-core. *See id.*; *Miller v. Parker (In re Reading Broadcasting, Inc.)*, 390 B.R. 532, 541 n.2 (Bankr. E.D. Pa. 2008) ("Denial of a motion to dismiss is interlocutory and can be issued by a bankruptcy judge even as to non-core matters.").

## **BACKGROUND**[1]

Plaintiff is a liquidating trust created pursuant to the terms of the First Amended Plan of Orderly Liquidation and Distribution of SAI Holdings Limited ("SAI Holdings"), Sandusky Liquidating Company, LLC, fka Sandusky, Limited, and Athol Manufacturing Corporation that was confirmed in the underlying

---

[1] Although Plaintiff failed to attach to its Amended Complaint copies of exhibits 1 through 4 that are attached to its original Complaint, Plaintiff refers to the exhibits in its Amended Complaint and both parties repeatedly refer to the exhibits in their briefs. The court considers the exhibits to be adopted by reference into the Amended Complaint and to be a part of the pleading for purposes of deciding this Motion. *See* Fed. R. Bankr. P. 7010; Fed. R. Civ. P. 10(c) (providing that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion" and that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

2

08-03036-maw    Doc 45    FILED 11/10/08    ENTERED 11/10/08 14:46:55    Page 2 of 10

Chapter 11 case ("Chapter 11 Plan"). [Case No. 06-33227, Doc. ## 984 & 1146].[2] Plaintiff is authorized under the Chapter 11 Plan to assert claims formerly held by SAI Holdings, Sandusky Liquidating Company, LLC, fka Sandusky, Limited, and Athol Manufacturing Corporation (collectively, "the SAI entities"). [*Id.*, Doc. # 984, ¶ 4.9].

The facts alleged in the Amended Complaint revolve around the relationship of Benecke-Kaliko with SAI Holdings and Sandusky, Limited – both its contractual relationships and its relationship as a member of SAI Holdings, a limited liability holding company for entities engaged in the sale and production of vinyl products. [*See* Complaint, Ex. 1, §§ 1.1, 1.5]. The Operating Agreement of SAI Holdings ("Operating Agreement") required each member[3] to contribute all of their respective units of Sandusky, Limited to SAI Holdings as consideration for its interests in the company. [*Id.* at Recitals & § 2.1]. The Operating Agreement includes, among other things, non-competition provisions that prohibit Benecke-Kaliko from selling its products in North America except under certain specified circumstances and that "[a]ny such sales shall be subject to a commission in favor of Sandusky, Limited under an Agency Agreement in effect from time to time between Sandusky, Limited and Benecke-Kaliko." [*Id.* at § 6.1(b)].

Benecke-Kaliko was also a party to a Sales Representative Agreement ("Sales Agreement") entered into with Sandusky, Limited. [*See* Complaint, Ex. 2]. Under that agreement, Sandusky, Limited, is designated the exclusive sales representative for Benecke-Kaliko in North America, [*Id.* at 1], and Benecke-Kaliko is required to pay specified sales commissions to Sandusky, Limited, for products sold by it in North America, [*id.* at §§ 5-6]. The Sales Agreement is for an indefinite period but sets forth the circumstances under which it can be terminated. [*Id.* at § 9]. One such circumstance is set forth as follows: "In the event of bankruptcy, liquidation, settlement or financial difficulties of more than a temporary nature, or in similar cases [Benecke-Kaliko] is entitled to terminate this Agreement with immediate effect, without giving any aforesaid notice." [*Id.* at § 9(5)]. By letter dated August 26, 2005, Benecke-Kaliko invoked § 9(5) and stated that it was terminating the Sales Agreement. [Complaint, Ex. 3].

In the Amended Complaint, Plaintiff alleges that Benecke-Kaliko breached both the Operating

---

[2] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

[3] The members set forth in the Operating Agreement are Eastar, Inc., Sandusky Holdings, Inc., Benecke-Kaliko, and Kyowa Leather Cloth U.S.A., Inc. [Complaint, Ex. 1, p.1].

3

Agreement and the Sales Agreement by failing to pay commissions due under those agreements on products it sold in North America. It also alleges that Benecke-Kaliko was unjustly enriched by its actions and that it breached fiduciary duties owed to "SAI, SAI's creditors, employees and equity holders." [Amended Complaint, ¶¶ 79, 82]. The court discusses more fully below the allegations relating to each of Plaintiff's claims. However, the court notes that the Amended Complaint refers repeatedly to "SAI," which it initially defines as collectively referring to all of the SAI entities, [*see* Amended Complaint, ¶ 1], but later defines as referring only to Sandusky, Limited, [*see id.* at ¶ 13]. Throughout the Amended Complaint, Plaintiff appears to waffle between the definitions and which entity or entities are being referred to when using the term "SAI." As discussed below, this causes confusion in understanding the allegations in the Amended Complaint.

## LAW AND ANALYSIS

Benecke-Kaliko's motion is brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) provides that a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In deciding a Rule 12(b)(6) motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint 'contains enough facts to state a claim to relief that is plausible on its face.'" *United States v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). While Rule 8(a)(2) does not require a complaint to set out detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ferron v. Zoomego, Inc.*, 276 Fed. Appx. 473, 475 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, – U.S. –, 127 S. Ct. 1955, 1964-65 (2007)). Rather, "to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

In addressing Plaintiff's state law claims, the parties agreed at the hearing on the Motion that the court should apply Ohio law.

4

## I. Breach of the Operating Agreement - Count I

The essential elements of a breach of contract claim are: "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jarupan v. Hanna*, 173 Ohio App.3d 284, 294 (2007). The Amended Complaint refers to the Operating Agreement and alleges that, "as part-owner of SAI, Benecke-Kaliko was a party to SAI's Operating Agreement." [Amended Complaint, ¶7]. Plaintiff alleges that "under the Operating Agreement, the parties agreed that SAI's members would not sell their products in North America, and that SAI, with certain well-defined exceptions, would sell its products only in North America" and that "if one of the members sold its products in North America, the member would pay commissions to SAI on those sales." [Amended Complaint, ¶ 9]. Plaintiff further alleges, among other things, that the parties intended these commissions to be part of the consideration Benecke-Kaliko would pay for its ownership interests in SAI, that SAI fulfilled its obligations under the Operating Agreement, that Benecke-Kaliko breached the Operating Agreement by failing to pay commissions on products it sold in North America, and that, as a result, SAI has suffered damages. [*Id.* at ¶¶ 10, 64-66]. In using the term "SAI" in these allegation, given the context and the citation to "the Operating Agreement, Exhibit 1," it is clear that Plaintiff is referring to SAI Holdings. The court finds these allegations adequately address each of the elements of a cause of action for breach of SAI Holdings' Operating Agreement.

Nevertheless, Benecke-Kaliko argues that there is no provision in the Operating Agreement requiring it to pay sales commissions to any SAI entity. It argues that the provisions in § 6.1(b) of the Operating Agreement, upon which Plaintiff relies, stating that sales by Benecke-Kaliko in North America "shall be subject to a commission in favor of Sandusky, Limited under an Agency Agreement in effect from time to time between Sandusky, Limited and Benecke-Kaliko" does not require it to pay sales commissions to any SAI entity since it "does nothing more than refer to another document. . . ." [Doc. # 15, Mem. in Support, p. 5]. The court disagrees. [Complaint, Ex. 1, § 6.1(b)].

Section 6.1(b) clearly states that "any such sales *shall* be subject to a commission. . . ." Furthermore, "where one instrument incorporates another by reference, both must be read together. Courts should attempt to harmonize provisions and words so that every word is given effect." *Fouty v. Ohio Dept. of Youth Servs.*, 167 Ohio App. 3d 508, 528 (2006) (quoting *Christe v. GMS Mgt. Co.*, 124 Ohio App. 3d 84, 88 (1997)). Thus, Plaintiff correctly argues that providing that the commissions would be the commissions under an "Agency Agreement" that would be in effect "from time to time" does not change the plain language of the Operating Agreement providing that the sales "shall" be subject to a commission. *See McKee Foods Corp.*

5

*v. Pitney Bowes, Inc.*, 2007 U.S. Dist. LEXIS 20630, *8, 2007 WL 896153, *3 (E.D. Tenn. March 22, 2007) (explaining that where the language of a contract is clear, contractual interpretation is a matter of law and may be addressed on a motion under Rule 12); *see Thomas v. Publishers Clearing House, Inc.*, 29 Fed. Appx. 319, 322-23 (6th Cir. 2002) (affirming Rule 12(b)(6) dismissal after interpreting exhibit and finding no valid contract).

**II. Breach of the Sales Agreement – Count II**

In Count II of the Amended Complaint, Plaintiff alleges that Benecke-Kaliko also breached the Sales Agreement by, among other things, failing to pay commissions to "SAI" on products sold in North America. [Amended Complaint ¶70]. It further alleges that "SAI" fulfilled all of its obligations under the Sales Agreement and that "SAI" has suffered damages as a result of the breach. [*Id.* at ¶¶ 69, 71]. Plaintiff's use of "SAI" in these allegations appears to refer to Sandusky, Limited, since, other than Benecke-Kaliko, it is the only party to the Sales Agreement. While these allegations address each element of a cause of action for breach of the Sales Agreement, Benecke-Kaliko argues that the following factual allegations in the Amended Complaint admit that Sandusky, Limited, was in "financial difficulties of more than a temporary nature:"

> SAI and its members entered into the Operating Agreement on December 31, 2002. At about that same time, SAI's raw material costs began to rise dramatically. This rise in SAI's costs began to hurt the company's financial performance. [Amended Complaint, ¶ 15].
>
> SAI analyzed its business, and concluded that it could lower its costs by closing its plant in Ohio ("Sandusky" or the "Sandusky Plant"), and moving all of its production to its North Carolina plant ("Athol" or the "Athol Plant"). [*Id.* at ¶ 16].
>
> SAI concluded that this "Cost Reduction Plan" was necessary to SAI to survive over the long run, and made the decision to implement it. [*Id.* at ¶ 18].

In light of these allegations, Benecke-Kaliko argues that it is evident that it rightfully invoked the termination provision in § 9(5) of the Sales Agreement and that after terminating the agreement on August 26, 2005, SAI was no longer entitled to receive sales commissions. *See Thomas,* 29 Fed. Appx. at 322 (stating that dismissal is appropriate where "a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief").

The use of the term "SAI" in the allegations cited by Benecke-Kaliko is confusing at best. Nevertheless, viewed in a light most favorable to Plaintiff, as the court must do, these allegations do not admit to Sandusky, Limited, being in financial difficulties of more than a temporary nature. Plaintiff alleges

6

that "labor costs at Athol were approximately half the costs at Sandusky" and, "[a]s a result SAI anticipated that moving all its production to Athol would make it significantly more competitive." [Amended Complaint, ¶ 17]. To the extent that "SAI," as used in these paragraphs, refers to Sandusky, Limited, these allegations simply state that it planned to move production at its Sandusky plant to its plant in North Carolina in order to cut costs. The fact that it decided to close an unprofitable plant does not require an inference of financial difficulties of more than a temporary nature. *See Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ("When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.").

Also, the court does not find Plaintiff's allegations that "SAI" filed for bankruptcy relief in November 2006 as a result of its financial deterioration after Benecke-Kaliko stopped paying sales commissions to be an admission of financial difficulties of more than a temporary nature at the time Benecke-Kaliko terminated the Sales Agreement in August 2005. The court, therefore, cannot conclude in the context of a Rule 12(b)(6) motion that Benecke-Kaliko rightfully terminated the Sales Agreement and that it, therefore, owed no sales commissions to Sandusky, Limited. Viewing the allegations in a light most favorable to Plaintiff, it has sufficiently stated a claim for breach of the Sales Agreement.

### III. Unjust Enrichment – Count III

In the Amended Complaint, Plaintiff alleges that "[a]s [Benecke-Kaliko's] sales representative, SAI provided [Benecke-Kaliko] with technical support, customer service, and sales and marketing assistance." [Amended Complaint, ¶ 14]. Plaintiff further alleges that Benecke-Kaliko "continued to take advantage of SAI's resources, using SAI's offices to operate, and SAI's employees for technical support, customer service, and sales and marketing assistance" and that Benecke-Kaliko was unjustly enriched by retaining these benefits without paying sales commissions. [*Id.* at ¶¶ 28, 72-76].

In support of its motion to dismiss, Benecke-Kaliko argues that Plaintiff's claim for unjust enrichment arises from Benecke-Kaliko's alleged breach of the Operating Agreement and Sales Agreement and that where an action to enforce a valid contract exists, the remedy of unjust enrichment is not available. While it is true that a party may not seek equitable relief for unjust enrichment *in addition to* relief that is available under a contract, a party may properly plead a claim for unjust enrichment as an *alternative* claim. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 825 (6th Cir. 2006); *Firelands Reg'l Med. Ctr. v. Jeavons*, 2008 Ohio App. LEXIS 4234, *13, 2008 WL 4408600, *5 (Ohio App. Sept. 30, 2008); *Nessle v. Whirlpool Corp.*, Case No. 1:07CV3009, 2008 U.S. Dist. LEXIS 56940, *16, 2008 WL 2967703, *6 (N.D. Ohio, July

7

25, 2008). The court finds that Plaintiff's unjust enrichment claim, viewed in a light most favorable to Plaintiff, is permissible as an alternative claim at this stage of the action.

**IV. Breach of Fiduciary Duty-Count IV**

In Count IV of the Amended Complaint, Plaintiff alleges that "as a part-owner of SAI with representation on its Board of Directors, Benecke-Kaliko had a fiduciary relationship with SAI and that fiduciary duties were also owed to SAI's creditors, employees, and equity holders "when SAI entered the 'zone of insolvency.'" [Doc. #1, Amd. Complaint, ¶ 78]. Plaintiff alleges that Benecke-Kaliko breached its fiduciary duty owed to SAI by, among other things, "[a]ttempting to terminate the Sales Agreement without cause in an attempt to force Eastar to sell its ownership interest in SAI to [Benecke-Kaliko]," by "[f]ailing to pay commissions owed to SAI," and by "[d]isparaging SAI's management to high-level representatives of Lear in order to lower SAI's value as part of an attempt to purchase the company at a bargain price." [*Id.* at ¶ 79].

Benecke-Kaliko argues that, based on the allegations in the Amended Complaint, there are no grounds on which the court could find that it owed a fiduciary duty to any SAI entity or that it breached such a duty. In support, it argues that the Amended Complaint contains no allegation of any wrongdoing by a director and cites several cases applying Ohio law for the proposition that a fiduciary duty arises in shareholders of a close corporation only if they are majority or controlling shareholders. *See Calepet v. Erico Holding Co.*, 65 Fed. Appx. 1, 3 (6th Cir. 2003) (stating in dicta that the inquiry into whether a minority shareholder owes a fiduciary duty either to the corporation or to other shareholders "turns on whether that individual so dominated the corporation that he or she can be said to have been in control to the exclusion of the other"); *Crosby v. Beam*, 47 Ohio St. 3d 105, 109 (1989) (recognizing that majority or dominant group of shareholders in a close corporation owe a fiduciary duty to minority shareholders); *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1407 (6th Cir. 1991). *But see Frank Lerner & Assoc. v. Vassy*, 74 Ohio App. 3d 537, 544 (1991) (recognizing that a fiduciary duty to deal in the utmost good faith may be imposed upon a minority shareholder of a close corporation where the actions of the minority shareholder have a controlling effect upon the corporation); *see also Rexford Rand Corporation v. Ancel*, 58 F.3d 1215, 1219-20 (7th Cir. 1995) (applying Illinois law and explaining that conduct by any shareholder in a close corporation, including minority shareholders, that is intended to be detrimental to the welfare of the enterprise is a breach of a duty of loyalty owed to the common venture); *Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 20 (1st Cir. 2002) (applying Massachusetts law and finding the law clear that minority shareholders in a close

8

corporation also have fiduciary responsibilities).

The case law cited by Benecke-Kaliko, however, is not applicable in this case. SAI Holdings[4] is an Ohio limited liability company. [*See* Complaint, Ex. 1, ¶ 1.1.] Under Ohio law, a limited liability company, like a partnership, involves a fiduciary relationship that "imposes on the members a duty to exercise the utmost good faith and honesty in all dealings and transactions related to the company." *Blair v. McDonagh*, 177 Ohio App. 3d 262, 277 (2008). In addition, "if the operating agreement of a limited liability company provides for managers, the business of the company shall be exercised by or under the direction of its managers. . . ," upon whom fiduciary duties are imposed by law. Ohio Rev. Code § 1705.29(A) & (B). The Ohio Revised Code provides that "[a] manager of a limited liability company shall perform his duties as a manager in good faith, in a manner he reasonably believes to be in or not opposed to the best interests of the company, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances." Ohio Rev. Code. § 1705.29(B). Ohio law makes no distinction between a member or manager with a majority interest as compared to one with a minority interest in imposing such fiduciary responsibilities.

In this case, Benecke-Kaliko is a member of SAI Holdings. [Complaint, Ex. 1, § 2.1]. And the SAI Holdings Operating Agreement names Benecke-Kaliko, among others, as a "managing" member. [*Id.* at § 7.1(a)]. The agreement further provides that the "Managing Members shall act through their designees (collectively, the "Directors") on the Executive Committee. . . ." [*Id.* at § 7.1(b)]. Thus, under Ohio law, as a member of SAI Holdings, it is clear that Benecke-Kaliko owed a duty of "utmost good faith and honesty" in all dealings relating to the company. In addition, it was required to "perform [its] duties as a manager in good faith, in a manner [it] reasonably believe[d] to be in or not opposed to the best interests of the company, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances." Ohio Rev. Code § 1705.29(B). The court concludes, therefore, that accepting the allegations in the complaint as true, Plaintiff has sufficiently stated a claim for relief based on a breach of fiduciary duty.

**THEREFORE**, for the foregoing reasons, good cause appearing,

---

[4] Again, which company Plaintiff is referring to by using the term "SAI" in its allegations in Count IV is not entirely clear. However, viewing the allegations in conjunction with the provisions of the Operating Agreement, it appears that Plaintiff is referring to SAI Holdings since the Operating Agreement states that Benecke-Kaliko is a member (i.e. part owner) of SAI Holdings.

9

**IT IS ORDERED** that Benecke-Kaliko's Motion to Dismiss [Doc. # 14] be, and hereby is, **DENIED.**